## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **STEVEN BAKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. CIV-24-763-R** |
| | ) | |
| **THE CITY OF OKLAHOMA CITY,** | ) | |
| **JAMES P. LINN II, DOROTHY** | ) | |
| **SYMINGTON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Before the Court is Plaintiff Steven Baker's Corrected Motion to Amend Complaint [Doc. No. 16]. Defendants James P. Linn II and Dorothy Symington filed a Response [Doc. No. 18] and Plaintiff replied [Doc. No. 20]. For the reasons set forth below, Plaintiff's Motion is GRANTED in part and DENIED in part.

### I.    Background

On July 26, 2024, Plaintiff filed a Complaint [Doc. No. 1] against Defendants City of Oklahoma City, James P. Linn II, and Dorothy Symington alleging age, race, and gender discrimination, violation of his First Amendment rights, tortious interference, and interference with an economic advantage. Defendant City subsequently filed its Answer [Doc. No. 8], while Defendants Linn and Symington each filed a motion to dismiss [Doc. Nos. 12, 14]. Plaintiff filed the present Motion for Leave to Amend shortly thereafter.[1]

---

[1] Plaintiff also filed a Motion for Extension of Time to Respond to Defendants' Motion to Dismiss [Doc. No. 17], which is rendered moot by this Order.

Defendants oppose Plaintiff's Motion on grounds of undue delay, undue prejudice, and futility.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 15(a)(2) courts should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). "The purpose of the Rule is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal citations and quotation marks omitted). Generally, refusing leave to amend is "only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

## III.    Discussion

### A. Undue Delay and Undue Prejudice

Defendants argue that leave to amend should be denied on the grounds of undue delay and undue prejudice. Neither argument is compelling.

This litigation does not yet have any deadlines or a scheduling order, and the Motion was brought within three months of the Complaint being filed. Moreover, the present Motion is the first instance in which Plaintiff has sought leave to amend. Therefore, Defendants has not established undue delay.

Granting leave to amend similarly would not prejudice Defendants. "[C]ourts typically find prejudice only when the amendment unfairly affects the defendants in terms

of preparing their defense to the amendment." *Minter*, 451 F.3d at 1208 (internal citations and quotation marks omitted). Here, Plaintiff's proposed Amended Complaint asserts no new claims, but rather adds clarifying or supportive facts to his existing claims, thus there is no effect on Defendants' ability to prepare a defense. Accordingly, Defendants will not be unduly prejudiced by the granting of Plaintiff's Motion.

**B. Futility**

Defendants assert that Plaintiff's Motion should be denied because the proposed amendments are futile. They specifically challenge the proposed allegations regarding Plaintiff's First Amendment retaliation claim, as well as his race discrimination claim brought pursuant to 42 U.S.C. § 1981.

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). The "futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim[.]" *Id*. Under that standard, the proposed amendments must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts that permit "the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Further, although conclusory allegations may be disregarded, all well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the plaintiff. *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007).

Moreover, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted).

### 1. First Amendment Retaliation

Defendants first challenge the plausibility of Plaintiff's First Amendment claim. Plaintiff's proposed Amended Complaint alleges that Plaintiff was the supervisor over a group of employees, the employees felt unsafe due to the conduct of another employee, the employees communicated their discomfort and a request for an armed guard to Plaintiff (their supervisor), and Plaintiff then reported these concerns to his supervisors, Defendant Linn and Assistant Superintendent Bill Frymire. One day later, Plaintiff was fired. Doc. No. 16-1 at ¶¶ 35-39.

Generally, a government employee's speech is protected by the First Amendment if he "'spoke as a *citizen* on a matter of *public concern*.'" *Green v. Bd. of Cty. Commissioners*, 472 F.3d 794, 798 (10th Cir. 2007) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)) (emphasis in original). To determine whether a public employee's First Amendment right to free speech has been abridged, the Court applies a five-element test that asks

> (1)    whether the speech was made pursuant to an employee's official duties;
> (2)    whether the speech was on a matter of public concern;
> (3)    whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;
> (4)    whether the protected speech was a motivating factor in the adverse employment action; and
> (5)    whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Duda v. Elder*, 7 F.4th 899, 910 (10th Cir. 2021) (internal citations omitted). "The first three elements concern whether the speech is protected and are 'issues of law for the court to decide.'" *Id*. at 911 (quoting *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014) (*Trant II*)). The final two elements are left to the trier of fact. *Id*. at 911.

In their Motions to Dismiss, Defendants each argued that Plaintiff's original Complaint failed to allege that he was speaking as a citizen rather than as an employee, and failed to plead facts to establish the scope of his job duties. Doc. Nos. 12 at p. 8; 14 at pp. 8-9. Plaintiff's proposed Amended Complaint includes two allegations to cure these deficiencies: paragraph 10 lists Plaintiff's official duties as those described in the job summary posted by Defendant City while paragraph 75 states that he "spoke as a private citizen by way of making complaints about workplace safety and threats of violence in the workplace, putting the lives and safety of others at risk." Doc. No. 16-1 at ¶¶ 10, 75.[2]

Defendants now argue that, despite the proposed amendments found in paragraphs 10 and 75, Plaintiff still has not plausibly stated a claim for relief under the First Amendment. More specifically, Defendants argue that Plaintiff failed to plausibly allege that (1) he was not speaking pursuant to his official duties; and (2) his speech was on a matter of public concern. Doc. No. 18 at pp. 6-7.

At this stage of the litigation, the Court must determine whether Plaintiff—taking his proposed amended factual allegations as true and viewing them in the light most

---

[2] At the outset, the Court notes that paragraph 75 includes a bare legal assertion—that is, simply alleging that he was speaking as a private citizen does not in itself plausibly allege that Plaintiff was in fact speaking as a private citizen. Accordingly, the Court does not take the allegation as true. *See Iqbal*, 556 U.S. at 678.

favorable to him—plausibly pled that he was speaking as a citizen outside of his official duties when he reported his subordinates' workplace safety concerns to his supervisors.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. The Tenth Circuit takes "a broad view of the meaning of speech that is pursuant to an employee's official duties." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010) (internal citations and quotation marks omitted). "In general, the [Tenth Circuit] has focused on whether the speech activity 'stemmed from and [was of] the type…that [the employee] was paid to do,' *Green*, 472 F.3d at 801, and has highlighted that the ultimate question in determining whether speech falls within an employee's official duties is 'whether the employee speaks as a citizen or instead as a government employee[.]'" *Id*. (citing *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007).

"[T]he listing of a given task in an employees' job description is neither necessary nor sufficient to demonstrate that it is within the scope of the employees' professional duties." *Trant v. Oklahoma*, 426 F. App'x 653, 659 (10th Cir. 2011) (*Trant I*). Instead, while "[t]he Supreme Court has not set out 'a comprehensive framework for defining the scope of an employee's duties in this context…it has explained that the proper inquiry is a practical one[.]" *Id*. (citing *Garcetti*, 547 U.S. at 421). Moreover, "[s]peech may pertain to official duties even though it addresses an unusual aspect of the employee's job that is not

part of his everyday functions, and even if it deals with activities the employee is not expressly required to perform[.]" *Id*. (internal citations and quotation marks omitted).

Three Tenth Circuit cases are particularly instructive in answering this inquiry: *Ellison v. Roosevelt Bd. of Cty. Commissioners*, 700 F. App'x 823 (10th Cir. 2017); *Trimble v. Bd. of Cty. Commissioners of Tulsa Cty., Oklahoma*, 728 F. App'x 789 (10th Cir. 2018); and *Trant v. Oklahoma*, 426 F. App'x 653 (10th Cir. 2011) (*Trant I*). In each case, the plaintiff was a government employee that raised employment-related concerns, was fired, and then filed an action for First Amendment retaliation. In all three cases, the claim was dismissed at the pleading stage for failure to state a claim because the plaintiff failed to plausibly allege that he was speaking as a private citizen. The Tenth Circuit affirmed the disposition of each on grounds that the plaintiff spoke pursuant to his official duties and thus was not protected by the First Amendment.

In *Ellison*, the plaintiff—a law enforcement officer—alleged that he was fired for "arresting his supervisor's acquaintance, reporting another officer's misconduct, and generally refusing to cover up wrongdoing at the Roosevelt County Sheriff's Office." *Ellison*, 700 F. App'x at 825. The first instance of alleged private speech was his opposition to another officer's assertion that an arrest he had made was illegal. *Id*. at 826. The second instance was the plaintiff's reporting another officer's confessed misconduct to his supervisor. *Id*. The district court dismissed the First Amendment claim pursuant to the defendant's Rule 12(b)(6) motion, finding that the speech was made pursuant to his official duties, and thus not protected. *Id*. at 827.

7

On appeal, the plaintiff argued that the first instance was protected because he was not speaking to a supervisor, and that the second instance was protected because, though he reported another officer's misconduct to a superior officer, the matter was of public concern. *Id*. at 828-29.

For the first instance, the Court held that the speech was made pursuant to the plaintiff's official duties because it "was speech made 'during the course of performing an official duty [aimed at] facilitat[ing] the employee's performance of the official duty.'" *Id*. at 829 (quoting *Brammer-Hoelter*, 492 F.3d at 1203). Additionally, the Court found that because the plaintiff's opposition was made to an officer "who had higher rank, who completed his job performance report, and who [the plaintiff] identifies in his appellate brief as 'his supervisor,'" the speech was made within the chain of command and "tend[ed] to show that [the plaintiff] was indeed speaking pursuant to his official duties." *Id*. at 829 (internal citations omitted).

For the second instance, the Court similarly found that because "the subject matter of [the plaintiff's] speech was related to his employment[,]" and "[the] allegations indicate[d] that [the plaintiff's] report of employment-related misconduct went straight up the chain of command, [it] signal[ed] that it was unprotected speech made pursuant to his official duties." *Id*. at 829-30 (citing *Rohrbough*, 596 F.3d at 747).

In *Trimble*, the plaintiff—the County IT manager—was fired after repeatedly complaining and raising concerns regarding a third-party medical provider hired by the County Jail. *Trimble*, 728 F. App'x at 790-92. The district court first defined the plaintiff's official duties from the allegations listed in the complaint. After finding that each disputed

8

communication was related to his official duties, the district court dismissed the plaintiff's First Amendment retaliation claim and found that amendment would be futile because his speech was made pursuant to his official duties and thus unprotected. *Id*. at 792-93.

On appeal, the Tenth Circuit affirmed the dismissal. First, it found that his speech was made pursuant to his official duties related to ensuring protection of the County's IT network because his complaints and concerns all stemmed from a desire to fulfill his duties. *Id*. at 794-95. Second, the Court held that the plaintiff's lack of employment with the third party and the Board's lack of authority over the Jail was of no effect because it was within his official duties to speak to and coordinate with "outsiders" and thus this "outside" speech did not transform his concerns into private speech. *Id*. at 795. Finally, the Tenth Circuit held that the fact that the plaintiff's concerns did not go up the chain of command was immaterial, because "[t]he proper focus is not on the recipient of the communication but on whether 'the speech stemmed from and was of the type that the employee was paid to do, regardless of the exact role of the individual or entity to which the employee ha[d] chosen to speak[,]" and the communications he had with Sheriff's Office officials "[was] for the purpose of helping him perform his duties as the County IT Manager." *Id*. at 795 (quoting *Rohrbough*, 596 F.3d at 747). Accordingly, the Tenth Circuit agreed with the district court that the plaintiff's speech was not protected.

Lastly, in *Trant I* the plaintiff—the Chief Medical Examiner for the State of Oklahoma—was fired after making the following forms of speech: an email to the Board of Medicolegal Investigations "relating his concern that OCME employees had given false or misleading accounts of sexual harassment by [a] former co-worker…[;]" comments to

the Board that "included criticism of [a] grand jury investigation[;]" and statements "about retaining counsel and reporting to outside authorities, such as the FBI, the wrongdoing he had discovered tainting the grand jury investigation." The first statement was made to the Board, while the second statement was made to the media. *Id*. at 659-60. The district court held that all four statements were made pursuant to the plaintiff's official duties and dismissed his First Amendment claim. *Id*. at 658.

On appeal, the Tenth Circuit held that the first two instances of speech were made pursuant to the plaintiff's official duties, and thus were unprotected, while the latter instances were not made pursuant to his official duties, and thus was deemed protected private speech. *Id*. at 659-61.

 For the first instance, the Court found that the speech—informing the Board about misconduct of personnel—was made pursuant to the official duties of the plaintiff and observed that "[t]here could hardly be a clearer example of chain-of-command communication: the employees were [the plaintiff's] subordinates and the Board his supervisor." The Court also distinguished the facts from the holding in *Reinhardt v. Albuquerque Pub. Sch. Bd. of Edu.*, 595 F.3d 1126, 1135-36 (10th Cir. 2010), which noted that a "report of wrongdoing may fall outside official duties if employee's job 'did not relate to reporting wrongdoing' and 'the employee went outside the chain of command when reporting the wrongdoing.'" *Id*. at 659-60. As the Court noted, the fact that the speech was made within the chain of command suggested that the speech was made pursuant to the plaintiff's official duties. *Id*. at 659.

For the second instance, the Tenth Circuit held that the plaintiff's reporting his subordinates' misconduct to his supervisors was speech made pursuant to his official duties and thus not protected. *Id*. at 660.

The final two instances of speech were deemed to be protected because "reporting or threatening to report wrongdoing to outside authorities is not within the scope of official duties where the employee is not tasked to do so by his employer nor required to do so by independent legal obligation imposed as a function of his official position. *Id*. 660 (citing *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324-26; *Casey v. West Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1331-32 (10th Cir. 2007)). Thus, because the plaintiff had no independent legal obligation to report misconduct to the FBI and there was no indication that reporting to legal authorities was included in his official duties, the Court held that the speech was private and protected. *Id*. at 660.

Here, Plaintiff's speech is analogous to the unprotected speech in *Ellison*, *Trimble*, and *Trant I*.

First, Plaintiff alleges that he reported his subordinates' workplace safety concerns directly up the chain of command. Doc. No. 16-1 at ¶ 35. Like in *Ellison* and *Trant I*, communicating directly to a supervisor signals that the speech is made pursuant to an employee's official duties. Moreover, the speech communicated the workplace safety concerns of his subordinates, which further indicates that the speech was made pursuant to his official duties as a supervisor.

Second, as in *Trimble*, the content of Plaintiff's speech was related to his official duties. Unlike the plaintiffs in *Ellison* and *Trant I*, the plaintiff in *Trimble* did not report

concerns up the chain of command. The contrast made by the *Trimble* Court to the speech at issue in both *Thomas* and *Brammer-Hoelter* is especially applicable here. In *Trimble*, the Court differentiated the plaintiff's speech from that of the plaintiffs in *Thomas* and *Brammer-Hoelter* because those plaintiffs either "went well beyond" their official responsibilities, *Thomas*, 548 F.3d at 1324, or "had neither supervisory responsibility nor a duty to report problems[.]" *Brammer-Hoelter*, 492 F.3d at 1205. Instead, the speech made by the plaintiff in *Trimble* "addressed matters committed to his care," and "were not freestanding citizen complaints but were moored to his own duties." *Trimble*, 728 F. App'x at 795-96.

In his Reply, Plaintiff argues that he went beyond his official duties when he reported the workplace safety concerns of his subordinates to his supervisors. Doc. No. 20 at p. 5. For support, he cites Defendant City's posted job summary, which describes the duties of a Unit Operations Supervisor in the Utilities Department as including:

> preparing sectional budgets and goals and objectives reports for submission to the Division or Department Head; writing specifications for bids on equipment, materials, supplies, and reviewing bids submitted to determine best supplier; monitoring operational expenditures; reviewing utility-related Federal, State, and local standards and regulations to ensure compliance with guidelines; implementing productivity improvement measures; preparing complex technical reports for submission to Department Head, City Manager and/or Federal/State agencies.

Doc. No. 16-1 at ¶ 10. However, in addition to the duties listed in Defendant City's job summary, Plaintiff's allegations indicate that, while it may not be a common or "everyday" occurrence, one of Plaintiff's official duties was to report the concerns of his subordinates to his supervisors. This determination is evidenced in paragraphs 14 through 19 of his

proposed Amended Complaint, in which Plaintiff alleges that on a prior occasion, his subordinates reported to him the misconduct of another employee, and that in response to these concerns, Plaintiff raised the issue with his supervisor, Defendant Linn. Doc. No. 16-1 at ¶¶ 14-19.

The speech at issue in this case followed a similar pattern, as shown in paragraphs 35 through 38, in which Plaintiff received concerns from his subordinates (whom he describes as "his employees") regarding workplace safety and a request for an armed guard due to the behavior and conduct of the same employee. Doc. No. 16-1 at ¶¶ 35-37. Just as he had done before, Plaintiff reported the concerns of his subordinates to his supervisor, Defendant Linn and this time included a list of warning signs of a violent employee. Doc. No. 16-1 at ¶ 38. Thus, while not expressly stated in his job description, his pleadings indicate that receiving concerns from his subordinates and reporting those concerns up the chain of command was one of Plaintiff's official duties.

Here, contrary to his argument, Plaintiff, unlike the plaintiff in *Thomas*, did not go "well beyond his official responsibilities," but rather did what he had done on a prior occasion: report the workplace safety concerns of his subordinates to his supervisor. Similarly, unlike the plaintiffs in *Brammer-Hoelter*, Plaintiff *did* have supervisory responsibility—it was the very title of his job. Additionally, one of Plaintiff's expressly stated responsibilities was to promote efficiency measures in his department, and his subordinates feeling unsafe at the workplace because of an allegedly unstable coworker could affect efficient operations. Accordingly, Plaintiff did not report the concerns of his subordinates to Defendant Linn as a "freestanding citizen" concerned with the general

safety of City employees, but rather, his reporting was "moored in his own duties" of promoting efficiency and ensuring the workplace safety of his subordinates. Thus, like in *Trimble*, the content of Plaintiff's speech was related to the fulfillment of his official duties.

In conclusion, Plaintiff's proposed Amended Complaint states that he reported the workplace safety concerns of his subordinates to his supervisors. Even considering all well-pleaded factual allegations in his favor, Plaintiff does not plausibly allege that his speech was made as a private citizen rather than as an employee in furtherance of his official duties. Accordingly, Plaintiff's Motion as it pertains to his First Amendment claim is denied.[3]

### 2.  42 U.S.C. § 1981 Race Discrimination

Defendants next argue futility of amendment regarding Plaintiff's claim brought pursuant to 42 U.S.C. § 1981 for race discrimination.

In their Motions to Dismiss, Defendants asserted that Plaintiff failed to state a plausible claim for relief under § 1981 because he did not allege facts to support a reverse race discrimination claim, nor did he allege facts sufficient to establish discriminatory intent. Doc. Nos. 12 at pp. 4-5; 14 at pp. 4-5.

To cure these alleged deficiencies, Plaintiff's proposed Amended Complaint adds allegations that his replacement was a black woman that had violated the same policy Plaintiff was accused of violating and that she had received approximately 31 grievances yet was not terminated and that Defendants participated in decisions allowing his

---

[3] Because the Court holds that futility defeats Plaintiff's Motion on the first element (speech was made pursuant to Plaintiff's official duties), the Court need not address the second element regarding public concern.

14

replacement to continue her employment. Doc. No. 16-1 at ¶¶ 41-42. Additionally, Plaintiff alleges that when he recommended a white applicant be hired, Defendant Linn rejected Plaintiff's recommendation because the decision would appear race-based if a white applicant was hired. Doc. No. 16-1 at ¶ 48. Plaintiff asserts that when Defendant Linn called for a lesser qualified minority applicant to be hired, he nevertheless selected a more qualified white applicant. Doc. No. 16-1 at ¶ 49. Next, Plaintiff claims that he had been told by his then-supervisor that another employee had been directed to place a tracker on his work vehicle because he is white. Doc. No. 16-1 at ¶ 50. Finally, Plaintiff alleges that Defendants City has applied less stringent hiring requirements to minority applicants and that it holds potentially discriminatory diversity trainings. Doc. No 16-1 at ¶ 51.

In their Response to the present Motion, Defendants simply argue that the proposed amendments add nothing that supports Plaintiff's § 1981 claim, and thus the amendment is futile.

To establish a prima facie case under § 1981, Plaintiff is required to plausibly allege four elements:

(1)    That he belongs to a protected class;
(2)    That he was qualified for the job;
(3)    That despite his qualifications, he was discharged; and
(4)    That the job was not eliminated after his discharge.

*English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1008 (10th Cir. 2001) (citing *Kendrick v. Penske Transp., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000)). Additionally, to establish a claim, Plaintiff "must show that Defendants intentionally or purposely discriminated against [him]." *Reynolds v. Sch. Dist. No. 1, Denver, Colo.*, 69 F.3d 1523, 1532 (10th Cir.

1995). As to the first element, because Plaintiff is white, he must "establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Gallo-Loeks v. U S West Communications, Inc.*, 57 F. App'x 846, 847 (10th Cir. 2003) (internal citations and quotation marks omitted). Regarding the requirement of intent to discriminate, "dissimilar treatment between similarly situated protected and non-protected employees may give rise to an inference of discrimination." *English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1011 (10th Cir. 2001). Additionally, "[p]ast discrimination may properly be considered evidence of current discriminatory intent in a disparate treatment case." *Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1175 (10th Cir. 1996).

Taking Plaintiff's allegations as true at this stage of the litigation, the proposed amended allegations set forth sufficient background circumstances and facts to plausibly support an inference of reverse racial discrimination, as well as evidence of dissimilar treatment sufficient to plausibly allege intentional discrimination.

Plaintiff alleges that Defendant City prefers minority applicants over white applicants in the hiring process, that Defendants Linn and Symington both participate in the carrying out of this preference, and that Plaintiff was treated differently than other employees because of his race through the placing of a tracker on his vehicle and because of the number of grievances against the employee hired to replace him. These facts—taken as true—plausibly allege that Defendant City prefers minorities in employment decisions, that Defendants Linn and Symington carry out this discriminatory preference, and further that Plaintiff has been treated differently than similarly situated minority employees

because of his race. Accordingly, amendment is not futile and Plaintiff's Motions as to his § 1981 claim is granted.

### IV.    Conclusion

Accordingly, Plaintiff's Motion is GRANTED as to his § 1981 claim and DENIED as to his First Amendment claim. Plaintiff is to file his Amended Complaint by November 22, 2024. Additionally, the granting of Plaintiff's Motion renders moot both Defendants' Motions to Dismiss, Doc. Nos. 12, 14, as well as Plaintiff's Motion for Extension of Time to Respond, Doc. No. 17. Each is accordingly DISMISSED.

IT IS SO ORDERED this 18th day of November, 2024.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**