**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **STEVEN BAKER,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. CIV-24-763-R** |
| **THE CITY OF OKLAHOMA CITY, et al.,** | ) | |
| **Defendants.** | ) | |

**ORDER**

Before the Court is Defendant Dorothy Symington's Motion to Dismiss [Doc. No. 40], and Defendant James P. Linn's Motion to Dismiss [Doc. No. 41]. Both Motions are fully briefed and at issue. For the reasons that follow, Defendants' Motions are DENIED.

**BACKGROUND**[1]

Plaintiff—a white male—was employed by the City of Oklahoma City for over 43 years [Doc. No. 28, ¶ 8]. After several promotions, he rose to the position of Unit Operations Supervisor. *Id.* ¶ 9. In 2022, Plaintiff hired Robert Moore as Field Operations Supervisor. *Id.* ¶ 13. Shortly thereafter, Plaintiff began receiving reports from employees that Moore was conducting himself in an unprofessional manner. *Id.* ¶¶ 14-18. Plaintiff reported the alleged misconduct to his supervisor, Defendant Linn. *Id.* ¶ 19. Moore was subsequently placed on a special assignment and no longer reported to Plaintiff. *Id.* ¶ 20.

---

[1] When reviewing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "take[s] the facts in the complaint as true…and [] views such facts in the light most favorable to the plaintiff[.]" *Knellinger v. Young*, 134 F.4th 1034, 1042 (10th Cir. 2025) (internal citations and quotation marks omitted).

In early 2023, Plaintiff learned from a third-party investigator that Moore had filed a complaint against him. *Id.* ¶ 21. The investigator told Plaintiff that the complaint was meritless. *Id.* ¶ 24. When interviewed by the investigator, Defendant Linn denied that Plaintiff was harassing Moore. *Id.* ¶ 25. Nonetheless, Plaintiff was required to attend mediation to resolve his conflict with Moore. *Id.* ¶ 26. The efforts were unsuccessful, as even the mediator noted that no one could work with Moore. *Id.*

In February of 2023, Plaintiff asked Defendant Linn if he had done anything wrong. *Id.* ¶ 27. Defendant Linn answered in the negative. *Id.* But just over a month later, Plaintiff received a letter from Defendant Symington, claiming that he had violated a policy prohibiting harassment. *Id.* ¶ 28. He received a similar letter in May of 2023, that also noted Moore's identical violation for his treatment of Plaintiff. *Id.* ¶ 29. On June 1, 2023, Defendant Linn notified Plaintiff of a pre-determination hearing scheduled for June 9, 2023, recommending discipline up to termination. *Id.* ¶ 30.

The hearing was presided over by Defendant Linn, Defendant Symington, and two management specialists. *Id.* ¶ 32. Defendant Symington instructed Plaintiff that either he or his representative could speak, but not both. *Id.* ¶ 33. Non-white employees were not subject to similar restrictions. *Id.* At the end of the hearing, Plaintiff was told that he would receive a ruling in two to three weeks. *Id.* ¶ 34. Plaintiff continued working while the decision was pending. *Id.*

By late September of 2023, Plaintiff had yet to receive a decision. *Id.* ¶ 35. On September 25, 2023, Plaintiff filed a complaint with Defendant Linn, reporting that Moore's behavior was so problematic that employees had requested an armed guard for the

job site. *Id.* ¶¶ 35-36. The next day he met with Defendant Linn and Defendant Symington, and was fired. *Id.* ¶ 39.

Plaintiff was replaced by Sheila Moore—a Black female who had violated the same policy as Plaintiff and had 31 grievances filed against her. *Id.* ¶¶ 40-41. Despite her track record of misconduct, Shiela Moore had never been terminated. *Id.* ¶ 41. Defendant Linn and Defendant Symington participated in decisions allowing Sheila Moore to keep her job, with Defendant Linn previously observing that Defendant City needed to hire more women in the department. *Id.* ¶ 42. And despite Robert Moore being found in violation of Defendant City's policies, he was not terminated. *Id.* ¶ 44.

According to Plaintiff, Defendant City has a history of discriminating against white employees. *Id.* ¶ 47. In one instance, Plaintiff was instructed to hire a less qualified minority applicant over a more qualified white applicant. *Id.* ¶ 48. After finding a white applicant most qualified, Defendant Linn denied Plaintiff's recommendation on racial grounds. *Id.* ¶ 49. Additionally, a Management Specialist instructed Plaintiff's then-supervisor to place a tracker on Plaintiff's work vehicle because Plaintiff is white. *Id.* ¶ 51. Moreover, Defendant City applies less stringent hiring standards to minority applicants, and asks discriminatory questions in diversity training. *Id.* ¶ 52. And while Defendant City applies a progressive discipline policy when punishing minority employees, no such policy was followed in Plaintiff's investigation. *Id.* ¶ 53.

Plaintiff sued Defendant City, Defendant Linn, and Defendant Symington, asserting claims under the ADEA, 42 U.S.C. § 1981, and Title VII for age, gender, and racial

discrimination.[2] *Id.* at pp. 10-13. Defendant Linn and Defendant Symington have separately moved to dismiss Plaintiff's Amended Complaint. Doc. Nos. 40 & 41. Both contend that dismissal is proper under Rule 12(b)(6) because (1) Plaintiff's § 1981 claim must be brought pursuant to 42 U.S.C. § 1983, (2) Plaintiff failed to allege personal participation, intentional discrimination, or background circumstances sufficient to support a claim of reverse race discrimination under § 1981, and (3) qualified immunity forecloses individual liability against Defendant Linn and Defendant Symington. Because the Motions are substantively similar, the Court addresses them together.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) is proper when a complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion, the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). And while the Court "must accept the truth of all properly alleged facts and draw all reasonable inference in the

[2] Plaintiff's original Complaint and Proposed Amended Complaint included claims for tortious interference, interference with economic advantage, and violation of his rights under the First Amendment [Doc. Nos. 1 & 16-1]. Defendant Linn and Defendant Symington challenged Plaintiff's Motion to Amend Complaint [Doc. No. 16], arguing in part that his claims for race discrimination under § 1981 and for violation of the First Amendment under 42 U.S.C. § 1983 were futile [Doc. No. 18 at pp. 5-8]. The Court granted Plaintiff's Motion for Leave to Amend Complaint in part, finding that he had alleged a plausible claim for relief under § 1981 for racial discrimination, and denied his Motion regarding the First Amendment claim, as futile [Doc. No. 21]. After another motion to dismiss [Doc. No. 25] and corresponding motion for leave to amend [Doc. No. 26], Plaintiff filed his Second Amended Complaint, Doc. No. 28, which did not include claims for tortious interference or interference with economic advantage.

plaintiff's favor, the plaintiff still 'must nudge the claim across the line from conceivable or speculative to plausible.'" *Id.* (quoting *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021)). "Mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action' will not suffice." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**DISCUSSION**

**A. The Court construes Plaintiff's § 1981 claim as asserted through § 1983.**

Defendants contend that dismissal of Plaintiff's § 1981 claim is appropriate because Plaintiff did not assert his claim through 42 U.S.C. § 1983. "Section 1981 claims are enforceable through § 1983." *Locke v. City of Choctaw, Okla.*, No. CIV-20-99-F, 2020 WL 1867008, at *2, n.4 (citing *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129 (10th Cir. 2006)). However, like the court in *Locke*, "[a]lthough the complaint does not mention 42 U.S.C. § 1983, the court construes all § 1981 claims as asserted through § 1983." *Id.* at *2. As such, "[t]o the extent defendants' arguments for dismissal are based on the complaint's failure to mention § 1983, those arguments are rejected." *Id.*

Accordingly, Defendants' Motions to Dismiss for failure to assert § 1981 claims through § 1983 are denied.

**B. Defendants are not entitled to qualified immunity.**

When a defendant moves for dismissal under Rule 12(b)(6) by reason of qualified immunity, "there is 'a presumption that the defendant is immune from suit.'" *Bledsoe v. Carreno*, 53 F.4th 589, 606 (10th Cir. 2022) (quoting *Estate of Smart ex rel. Smart v. City of Wichita*, 951 F.3d 1161, 1168 (10th Cir. 2020)). "'To overcome this presumption, the

plaintiff must show (1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time of the defendant's complained-of conduct.'" *Id*. (quoting *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021)). However, "'[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion … subjects the defendant to a more challenging standard of review than would apply on summary judgment.'" *Id*. at 607 (quoting *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022)). This is because "[o]n a motion to dismiss, 'it is the defendant's conduct as alleged in the complaint that is scrutinized for constitutionality.'" *Id*. (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)) (brackets omitted) (emphasis in original).

**1. Plaintiff has plausibly alleged reverse racial discrimination violative of § 1981.**

Section 1981 "prohibits racial discrimination in the workplace." *Howard v. Okla. Dep't of Corr.*, 247 F.Supp.3d 1210, 1224 (W.D. Okla. 2017) (citing *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1221 (10th Cir. 2015)). When a plaintiff's § 1981 claim is supported by indirect, rather than direct evidence of discrimination, the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) guides the Court's analysis. *See English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1007-08 (10th Cir. 2001). Under the *McDonnell Douglas* framework, the Plaintiff "bears the initial burden of establishing a prima facie case by the preponderance of the evidence." *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999) (citation omitted). But the "prima facie case under *McDonnell Douglas* [] is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). And as noted in *Swierkiewicz*, the Supreme Court "has

never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id*. at 511; *see also Morman v. Campbell Cty. Mem. Hosp.*, 632 F. App'x 927, 933 (10th Cir. 2015) ("As the Court made clear, the standards for employment discrimination set forth in *McDonnell Douglas* simply do not 'apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss.'") (quoting *Swierkiewicz*, 534 U.S. at 511)).

However, "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing *Swierkiewicz*, 534 U.S. at 515). To establish a prima facie case of wrongful termination based on racial discrimination under § 1981, a plaintiff must demonstrate that: "'(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after discharge.'" *English*, 248 F.3d at 1008 (quoting *Kendrick v. Penske Transp. Serv., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000)). Moreover, because Plaintiff is white, he must clear an additional hurdle to state a plausible claim under § 1981 because "for a reverse discrimination claimant to establish a prima facie case of discrimination under the *McDonnell Douglas* paradigm, [he] must 'establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority.'" *Gallo-Loeks v. U S West Communications, Inc.*, 57 F. App'x 846, 847 (10th Cir. 2003) (quoting *Notari v. Denver Water Dep't*, 971 F.2d 585, 589 (10th Cir. 1992)).

Additionally, Plaintiff must also plausibly allege that Defendants purposefully discriminated against him on the basis of race. *See Gen. Bldg. Contractors Ass'n, Inc. v. Penn.*, 458 U.S. 375, 389 (1982) ("[Section] 1981 reaches only purposeful discrimination[.]"); *see also Lewis v. City of Ft. Collins*, 903 F.2d 752, 755, n.1 (10th Cir. 1990) ("A § 1981 claim always requires purposeful discrimination.").

Here, Defendants challenge Plaintiff's satisfaction of the first element, contending that he has failed to allege background circumstances sufficient to meet the reverse discrimination threshold. But Plaintiff has alleged that Defendant City prefers minority applicants over white applicants in the hiring process, as demonstrated by Plaintiff's allegation that Defendant Linn counseled against him hiring a more qualified white applicant based on race and required employees to undergo discriminatory diversity training. Taken together with Plaintiff's other allegations, the Court finds that he has plausibly alleged background circumstances sufficient to support a claim of reverse discrimination.

Defendants also argue that Plaintiff failed to plausibly allege purposeful discrimination. *Meade v. Merchants Fast Motorline, Inc.*, 820 F.2d 1124 (10th Cir. 1987) is instructive. There, the Tenth Circuit found that the plaintiff's claim that he "was disciplined…and finally terminated *because of his race* and not good cause in connection with his employment[.]" was sufficient to "adequately capture" the "requisite state of mind" necessary to allege intentional or purposeful discrimination. *Id*. at 1125 (quotation marks omitted) (emphasis in original). Here, Plaintiff has plausibly alleged that Defendants' discrimination was purposeful. For example, he claims that Defendant

Symington limited his speaking rights at his predetermination hearing because of his race and that non-white employees were not subject to the same limitations. Further, Defendant claims that Defendant Linn was present at the meeting and allowed the purposeful discrimination to take place without challenge. Moreover, a reasonable inference to be drawn from Plaintiff's allegation that he was replaced by a Black woman with 31 grievances filed against her after he was terminated for a singular grievance suggests that his termination was purposeful and premised upon his race. The Court finds these allegations sufficient to support an inference of purposeful discrimination. Moreover, the Court finds that Plaintiff has plausibly alleged that both Defendant Symington and Defendant Linn personally participated in the violative conduct.

Accordingly, Plaintiff has stated prima facie claim for violation of § 1981.

**2. It is clearly established that racial discrimination in public employment violates § 1981.**

"[T]he law is clearly established that racial discrimination in public employment, including reverse discrimination, is prohibited by the Constitution and § 1981." *Ford v. Justice Alma Wilson Seeworth Acad.*, No. CIV-08-1015-D, 2010 WL 545871, at *3 (W.D. Okla. Feb. 9, 2010) (citing *Ramirez v. Dep't of Corr.*, 222 F.3d 1238, 1244 (10th Cir. 2000), then citing *Reynolds v. Sch. Dist. No. 1*, 69 F.3d 1532, 1534 (10th Cir. 1995)).

Here, Plaintiff has plausibly alleged that Defendants discriminated against him based on race in his role as a public employee. Because it was clearly established at the time of Defendants' alleged wrongful conduct that racial discrimination in public employment was violative of § 1981, Defendants were on notice that treating Plaintiff

differently because of his race was violative of his right to be free from racial discrimination in the workplace. And given the alleged egregious nature of Defendants' violations—most directly, depriving Plaintiff of equal speaking rights at his predetermination hearing because of his race—the Court finds that no reasonable official could have interpreted the law as permitting their actions. *See Ullery v. Bradley*, 949 F.3d 1282, 1298 (10th Cir. 2020). Accordingly, "[i]f Defendant[s] did not 'knowingly violate the law[,]'" *id*., when they limited Plaintiff's speaking rights because of his race, "then [they are] 'plainly incompetent.'" *Id*. (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018)). Regardless, their actions are not sheltered by the doctrine of qualified immunity.

**CONCLUSION**

Accordingly, both Defendant Symington's Motion to Dismiss and Defendant Linn's Motion to Dismiss are DENIED.

IT IS SO ORDERED this 3rd day of June, 2025.

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**